Filed 12/30/24  P. v. Valdiviez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>MIGUEL VALDIVIEZ,<br><br>     Defendant and Appellant. | B335149<br><br>(Los Angeles County<br>Super. Ct. No. KA006935) |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Reversed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Miguel Valdiviez pled guilty to murder and attempted willful, deliberate and premeditated murder. Years later, Valdiviez petitioned for resentencing under Penal Code[1] section 1172.6, which limited accomplice liability for murder. The trial court denied the petition at the prima facie stage, apparently based in part on Valdiviez's admission to premeditation allegations. Valdiviez appeals, contending that neither his plea nor the preliminary hearing transcript establishes his ineligibility for relief. The People concede that Valdiviez made a prima facie showing of eligibility for section 1172.6 relief. We agree and reverse the order denying his petition.

## BACKGROUND

I.  Evidence at the preliminary hearing

At a preliminary hearing in 1991, evidence was introduced that Valdiviez and accomplices Rosendo Avalos and Mario Santacruz were involved in three shooting incidents on the evening of October 12, 1990.

The first shooting occurred between 9:30 p.m. and 10:00 p.m. Joe Fierro and Jaime Morales were in a parked car in Baldwin Park. A burgundy "Regal" car with three occupants stopped alongside them. According to Fierro, Avalos was the car's driver. Avalos got out of the car, asked Fierro where he was from, and shot at Fierro and Morales, wounding Fierro.

The second shooting occurred soon thereafter, between 10:00 p.m. and 10:15 p.m. Cynthia Montes was down the street

---

[1]  All further statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

from where the first shooting occurred with East Side gang members Naidene Montes, Jose Velazco, and Rudolfo Chavez. Cynthia Montes saw someone get out of a Regal car and start shooting.  Chavez was shot and died.

The third shooting involved Baldwin Park Police Officer Ken Shearen.  At about 10:00 p.m. to 10:30 p.m., Officer Shearen was on duty, in uniform, and in a marked patrol car with a fellow officer.  At about 10:11 p.m., a radio broadcast was issued of shots fired nearby.  The officer saw a Buick Regal leaving the area of the shooting and followed it.  When the officer tried to stop the car, it sped away.  While pursuing the car, its passenger shot at the officer.

Valdiviez gave a statement to law enforcement that he, Avalos, and Santacruz had gone into East Side gang territory to look for "cholos."  Avalos had a couple of handguns.  Valdiviez pulled the Buick Regal he was driving alongside a parked car, asked the two people in the car where they were from, and shot at them.[2]  Valdiviez drove away, but saw a group standing in the street, and Avalos fired into the group.  Valdiviez did a U-turn and approached the group again, and this time, Santacruz fired at the group from the rear driver's side of the Regal.  Shortly after the shootings, a police car pursued the Regal, and Avalos fired at the police car during the pursuit.

---

[2]     Valdiviez's statement contradicted Fierro's testimony that Avalos shot at Fierro and Morales.

3

II.    Information, plea, and sentence

An information jointly charged Valdiviez and Avalos with crimes arising out of three shooting incidents. The information alleged gang enhancements as to all counts. Counts 1 through 4 concerned the second shooting and alleged count 1 for the murder of Chavez (§ 187, subd. (a)) and counts 2 (Velazco), 3 (Naidene Montes), and 4 (Cynthia Montes) for attempted willful, deliberate and premeditated murder (§§ 664, 187, subd. (a)). The information further alleged that Avalos personally used a gun (§§ 1203.06, subd. (a)(1), 12022.5) and that a principal used a gun (§ 12022, subd. (a)(1)).

Counts 5 and 6 were for the attempted willful, deliberate and premeditated murders of Fierro and Morales. These counts alleged that Valdiviez personally used a gun (§§ 1203.06, subd. (a)(1), 12022.5), a principal used a gun (§ 12022, subd. (a)(1)), and Valdiviez, with intent to do so, discharged a firearm from a vehicle causing great bodily injury and death (§§ 12022.5, subd. (b), 12022.55, 12022.7).

Count 7 was for the attempted willful, deliberate and premeditated murder of Officer Shearen and count 8 was for assault with a firearm on a peace officer or firefighter (§ 245, subd. (d)(1)). These counts alleged that Avalos personally used a gun (§§ 1203.06, subd. (a)(1), 12022.5) and that a principal used a gun (§ 12022, subd. (a)(1)).

In 1991, Valdiviez pled nolo contendere to count 1 for second degree murder and counts 2 through 7 for attempted

4

willful, deliberate, and premeditated murder.[3]  As to the murder count and four of the attempted murder counts (counts 2, 3, 4, and 7), Valdiviez admitted principal gun use allegations (§ 12022, subd. (a)(1)).  As to counts 5 and 6 for attempted willful, deliberate, and premeditated murder, he admitted personal gun use allegations (§§ 1203.06, 12022.5, subd. (a)).  He also admitted gang allegations as to counts 1, 3, 4, 5, 6, and 7.

A court sentenced Valdiviez to 15 years to life for the murder and to concurrent terms of 15 years to life on counts 2 through 7.  Counsel stipulated that the preliminary hearing transcript and probation report contained a factual basis for the plea.

III.    Valdiviez's section 1172.6 petition for resentencing

In 2022, Valdiviez filed a form petition for resentencing under section 1172.6.  He checked boxes declaring:  (1) a pleading was filed against him allowing the prosecution to proceed under a now-invalid theory of law, (2) he was convicted of murder or attempted murder following a trial or plea in lieu of a trial at which he could have been convicted of murder or attempted murder, and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189.

The People opposed the petition on the ground that Valdiviez pled no contest to attempted murder and admitted he personally used a firearm; therefore he was a direct aider and abettor.

---

[3]    We grant Valdiviez's motion to augment the record on appeal with the reporter's transcripts of the plea and the preliminary hearing.  (Evid. Code, § 452, subd. (d).)

On October 16, 2023, the trial court denied the petition. The trial court noted that Valdiviez had stipulated to a "factual basis on the preliminary hearing transcript" and admitted willful, deliberate and premeditated allegations as to counts 2 through 7.

## DISCUSSION

I.     Overview of Senate Bill No. 1437

To the end of ensuring a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) As amended by Senate Bill No. 775, effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

Senate Bill No. 1437 added section 188, subdivision (a)(3) (stating that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and malice "shall not be imputed to a person based solely on his or her participation in a crime") and section 189, subdivision (e) (limiting application of the felony-murder rule). Under section 188, subdivision (a)(3), an accomplice no longer may be guilty of murder based on the mere determination the accomplice aided and abetted a target crime, and murder was a natural and probable consequence of that

6

target crime. (See generally *People v. Reyes*, *supra*, 14 Cal.5th at p. 984.) Similarly, the "felony-murder doctrine had allowed accomplices to be held liable for murder simply by participating in certain felonies with the killer," but the doctrine as now limited by section 189, subdivision (e), "allows accomplices to a felony to be held responsible for a cohort's act of murder only if the accomplice 'with the intent to kill' aided and abetted 'the actual killer in the commission of murder in the first degree' or the accomplice was a 'major participant in the underlying felony and acted with reckless indifference to human life.' [Citation omitted.] The changes benefit some accomplices to murder but they never affect the murder liability of the killers." (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1164, review granted May 1, 2024, S284232.)

Senate Bill No. 1437 created a procedure, codified at section 1172.6, for a person convicted of murder or attempted murder under the former law to petition for resentencing. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 847.) A petitioner commences that procedure by filing a petition containing a declaration that (1) the petitioner faced charges allowing the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was convicted of murder or attempted murder at trial or pled guilty in lieu of a trial at which they could have been convicted of murder or attempted murder; and (3) the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)). (See generally *People v. Strong* (2022) 13 Cal.5th 698, 708.)

7

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proven. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In determining whether the petitioner has made a prima facie case for relief, the trial court may look at the record of conviction, including jury instructions, verdicts, and closing argument, to determine readily ascertainable facts such as the crime of conviction. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 56.) At the prima facie stage, the trial court does not engage in fact finding that involves the weighing of evidence or exercise of discretion. (*Lewis*, at p. 972.) If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing at which the parties may offer new or additional evidence and the trial court sits as an independent factfinder to determine beyond a reasonable doubt whether the defendant is guilty of murder under a valid theory. (§ 1172.6, subds. (b)(3), (c), & (d); *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) But if at the prima facie stage the record of conviction establishes that the petition is meritless, the trial court may dismiss it. (*Lewis*, at p. 971.)

To deny a petition at the prima facie stage, the record of conviction must demonstrate the petitioner is ineligible for relief as a matter of law. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.) We review the denial of a petition at the prima facie stage de novo. (*Ibid.*)

8

II.    The record of conviction does not preclude section 1172.6 relief as a matter of law

Valdiviez contends he made the requisite prima facie case for section 1172.6 relief because nothing in the record of conviction shows that the People could not have pursued a now-invalid theory of murder and attempted murder. He further contends that, to the extent the trial court relied on evidence presented at the preliminary hearing, such reliance was improper. The People concede that Valdiviez made a prima facie case of eligibility for section 1172.6 relief, and we agree.

The trial court here appears to have denied Valdiviez's petition as to the attempted murder counts based primarily on Validviez's admission to the intentional, willful, and premeditation allegations. The trial court thus reasoned that Valdiviez acted with malice aforethought and was therefore ineligible for relief. That admission, however, does not establish that Valdiviez *personally* acted with malice aforethought. Rather, section 664, subdivision (a), increases the punishment for attempted murder to life with the possibility of parole if the jury finds that the attempted murder was " 'willful, deliberate, and premeditated murder, as defined in Section 189.' " (*People v. Favor* (2012) 54 Cal.4th 868, 875.) Section 664, subdivision (a), applies to direct perpetrators *and* to accomplices liable under the natural and probable consequences doctrine. (*Favor*, at p. 878.) Stated otherwise, a trier of fact can find a premeditation allegation true if any principal in the crime premeditated. Applied here, the People could have argued that the premeditation allegation was true as to Valdiviez if only Avalos premeditated. Because Valdiviez's admission therefore did not establish he personally premeditated as a matter of law, he is not

9

ineligible for relief as to the attempted murder counts. (See, e.g., *People v. Eynon* (2021) 68 Cal.App.5th 967, 978 [defendant's guilty plea and admission he committed murder with deliberation and premeditation was not admission "*he acted with* deliberation and premeditation, let alone that he acted with deliberate and premeditated intent to kill"].)

Further, although Valdiviez admitted he personally used a gun under sections 1203.06 and 12022.5, subdivision (a), in connection with counts 5 and 6 for the attempted murders of Fierro and Morales, that admission did not establish Valdiviez shot the gun, because section 12022.5 encompasses brandishing, displaying, or firing a gun. (*People v. Arzate* (2003) 114 Cal.App.4th 390, 399–400.) The admission also did not foreclose the possibility there was another or more than one shooter during that incident or establish Valdiviez had the requisite malice aforethought (see generally *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [true finding on § 12022.53, subd. (d), firearm enhancement does not show defendant acted with malice aforethought]). Valdiviez's admission he personally used a gun therefore also did not render him ineligible for relief under section 1172.6.

Nor did Valdiviez's plea render him ineligible for relief as to the murder count because the record of conviction does not establish he was Chavez's actual killer. To the contrary, Valdiviez admitted only principal gun use allegations as to that count. Moreover, Valdiviez and Avalos were jointly charged with murder but only Avalos was charged with personally using a gun, suggesting that Avalos—not Valdiviez—might have been prosecuted as Chavez's actual killer. This suggests that the People would have pursued murder under the now-invalid

10

natural and probable consequences doctrine against Valdiviez. That is, Valdiviez aided and abetted a target offense, the natural and probable consequence of which was murder. (See generally *People v. Prettyman* (1996) 14 Cal.4th 248, 260–262.)

Because the information and Valdiviez's plea establish a prima facie case for section 1172.6 relief, we need not consider his additional contention that the trial court erred to the extent it considered the preliminary hearing transcript. However, even if we assume that a trial court may properly consider the preliminary hearing—an issue on which courts of appeal are divided[4]—the evidence at Valdiviez's preliminary hearing does

---

[4] See generally *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 [transcripts from preliminary hearing and plea hearing established defendant was convicted of murder as a direct aider and abettor]; *People v. Mares*, *supra*, 99 Cal.App.5th at p. 1167, [only theory that preliminary hearing transcript supported was defendant acted alone as actual killer]; *People v. Pickett* (2023) 93 Cal.App.5th 982, 990–993, review granted October 11, 2023, S281643 [courts can rely on preliminary hearing transcripts to determine prima facie eligibility even if a defendant does not stipulate it is factual basis for plea]; accord, *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670; but see *People v. Flores* (2022) 76 Cal.App.5th 974, 991– 992 [preliminary hearing transcript did not exclude possibility the defendant could have been prosecuted under imputed malice theory]; *People v. Williams* (2024) 103 Cal.App.5th 375, review granted September 11, 2024, S286314 [even if preliminary hearing transcript provides probable cause defendant was actual perpetrator, information containing generic murder charge permits prosecution to proceed at trial under invalid murder theory]; *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 [trial court erroneously relied on preliminary hearing transcript at prima facie stage because defendant did not stipulate to it as

11

not preclude relief.  Instead, the evidence introduced at that hearing showed that three people were involved in the crimes: Valdiviez, Avalos, and Santacruz, who was not charged with Valdiviez and Avalos.  The evidence was that Avalos and Santacruz—not Valdiviez—fired at the group on the street, including at the murder victim Chavez, and at Officer Shearen.  Thus, the preliminary hearing does not show that Valdiviez was Chavez's actual killer or the would-be slayer as to attempted murder counts 2, 3, 4, and 7.  The preliminary hearing transcript also contains conflicting evidence about who shot at Fierro and Morales as they sat in their car (counts 5 and 6).  Valdiviez confessed to being the shooter, but Fierro testified that Avalos was the shooter.  The preliminary hearing therefore did not establish Valdiviez was ineligible for section 1172.6 relief.

---

factual basis for plea]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232.

## DISPOSITION

The order denying Miguel Valdiviez's Penal Code section 1172.6 petition is reversed with the direction to the trial court to issue an order to show cause and to proceed in accordance with section 1172.6, subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

13